The judges of the election certified that the result thereof was a majority of eight (8) votes in favor of prohibiting the sale of intoxicating liquors as a beverage within said district.
On July 7, 1904, and within ten (10) days after said election, one William W. Gorey, an elector residing in said district, and a saloon-keeper, filed in this court his petition alleging that said election was not a legal and valid election, for the reason set *390 out in said petition, and asked that said election be declared null and void and of no effect.
Upon this petition a summons was issued on the 7th day of July, 1904, to the sheriff of Clark county, Ohio, under the seal of the court, commanding him to notify Charles J. Bowlus, Mayor of the City of Springfield, that William W. Gorey had filed his petition contesting the validity of the election, and notifying him that he was required to appear in the probate court on behalf of the residence district, on the 15th day of July, 1904, at 9 o’clock a. m. On the 8th day of July said summons was returned endorsed as follows:
“Received this writ on the 7th day of July, A. D. 1904, and on the 8th day of July, A. D. 1904, I served the within named Charles J. Bowlus, Mayor of the City of Springfield, Ohio, by leaving a true and certified copy thereof, with all the endorsements thereon, at his usual place of residence. Also on the same day of July, A. D. 1904, I left a like copy thereof, with all the endorsements thereon, at the office of said Charles J. Bowlus, Mayor of the City of Springfield, Ohio; L. Floyd Routzahn, Sheriff, by H. A. Routzahn, Deputy.”
On the 22d day of August, 1904, Charles J. Bowlus, Mayor of the City of Springfield, by the city solicitor, Stewart L. Tatum, for the sole purpose of objecting to the jurisdiction of the court, filed his motion herein to set aside and quash the original service of summons, for the reasons therein stated, among others, as follows:
“That the service was not made upon the city of Springfield or upon any person as mayor of said city; and for the further reason that the service was directed to Charles J. Bowlus, who was at the time of the filing of the petition and continuously until after the date set for the filing of the answer thereto, absent from said city, and that during the time within which service was required by law to be made, William IT. Schaus was the duly qualified and acting mayor of said city, and that said William H. Schaus was not served.”
Said motion is supported by affidavits. In one, Charles J. Bowlus states that he is the duly qualified, elected and acting mayor of the city of Springfield, and that William H. Schaus is the duly qualified and elected president of council of said *391 city, and in the absence of the mayor from said city the acting mayor thereof; that he, the said Bowlus, was absent from the city of Springfield from the 3d day of July, 1904, until the 25th day of July, 1904, and that at the time of the filing of the petition and continuously until and including the day set for the return of the summons, William PL Schaus was the. qualified and acting mayor of the city of Springfield, Ohio.
The affidavit of William PI. Schaus reiterates the statements of Charles J. Bowlus, and further states that during the absence of Charles J. Bowlus from the city he was the acting' mayor, and performed the duties of the mayor of said city; that he was continuously present in said city, and that the absence of Charles J. Bowlus from said city in attendance at the Democratic National Convention at St. Louis was a matter of common knowledge.
The Constitution of Ohio, Article II, Section 21, provides that the General Assembly shall determine by law before what authority and in what manner the trial of contested elections shall be conducted. The General Assembly, by virtue of the authority thus conferred on it, has by Section 11 of the so-called “Brannopk Law,” in what seems to the court to be a very crude and ill-considered provision, conferred upon the probate judge of the county final jurisdiction to hear and determine the merits of any proceeding brought to contest an election held under said act. This provision is, with one exception, almost a verbatim copy of a like provision in the Beal Law, which is the prototype of the Brannock Law.
The petitioner has brought himself within the provisions of Section 11 of the Brannock Law, by alleging that he is a qualified elector of the district involved, and giving security for costs, and filing his petition within ten (10) days after the election, setting forth the grounds for his contest.
The court has jurisdiction of the subject matter, and it now remains to be determined whether or not the court, within the time allowed by the statute, has acquired jurisdiction of those persons whom, by the statute, it is necessary to bring within its jurisdiction.
The jurisdiction of the person may be acquired ordinarily by commencing an action, such as was here begun, causing proper *392 process to be issued and served by the sheriff, or other officer designated by law. When this is done, the court having jurisdiction of the subject matter and the proper parties, may hear and determine all the questions properly arising..
Section 11 is very meager and obscure in its statement of the method of conducting this contest.
The provision of the Brannock Law in reference to the service of summons is as follows:
“The probate judge, upon the filing of such petition, shall forthwith issue a summons addressed to the mayor of such municipal corporation, notifying him of the filing of such petition, and directing him to appear in said court on behalf of said residence district at a time named in the summons, which time shall not be more than twenty days after the election nor less than five days after the filing of such petition.”
There is no provision in the probate code or in the Brannock Law as to what shall constitute a summons, or the method in which the same shall be served, and, as a consequence, we must look to the code of civil procedure to ascertain these matters.
Section 5034 of the Revised Statutes provides that summons shall be issued and signed by the clerk and be under the seal of the court, dated the day it is issued, and shall be directed to the sheriff of the county, who shall be commanded therein to notify the defendant that he has been sued and must answer by the time stated therein, or the petition will be taken as true and judgment rendered accordingly.
The summons issued in this case complied with all the provisions of Section 5034. It remains to be seen whether or not the sheriff, or officer serving it, has followed the provisions of the civil code, or any other provisions that may be found in the law for the serving of summons.
Section 11 of the Brannock Law provides that summons shall be issued to the mayor, requiring him to appear and defend; and it may be contended that that is a special provision of the Brannock Law, which supersedes and overrides all other provisions, both of the civil and the municipal code in reference to the service of summons, and upon whom the same shall be served; but the court is not of the opinion that, by the provisions of *393 this act that summons shall be made upon the mayor, it thereby intended to supersede any provision of the municipal code which may determine who is the mayor, at the time the service is made. The return shows that the service was attempted in two way% first, by leaving a copy, with all the endorsements thereon, at the residence of Charles J Bowlus, Mayor of the City of Springfield; and second, by leaving a copy at the office of the said Charles J. Bowlus, Mayor of .the City of Springfield, so that the question at once becomes of importance as to whether or not, at the time of these attempted services, Charles J. Bowlus was, for the purpose of performing the function of mayor, actually the mayor of the city of Springfield.
The affidavits of Mr. Bowlus and Mr. Schaus, both of which' are uncontradicted and are evidently a true statement of the facts, make it appear that, at the time this service was made, and continuously thereafter, and until after the day upon which the mayor was required to appear in this court, Charles J. Bowlus was absent from the city of Springfield, attending the Democratic Convention in St. Louis, and that William H. Schaus, the duly qualified and elected president of the city council, was exercising the functions created, and performing the duties imposed upon the mayor.
Section 129 of the Municipal Code provides the duties, qualifications and powers of the mayor of the municipality.
Section 132 provides as to the president of the council that—
“When the mayor is absent from the city or unable from any cause to perform his duties, the president of council shall be the acting mayor, and in case of the death, resignation or removal of the mayor, the president of council shall become mayor and serve for the unexpired term. ’ ’
It will be observed by reading this statute that there are two conditions under which the president of the council shall be acting mayor. One is, that when the mayor is absent from the city; and the other is, “when he is unable from any cause to perform his duties.” Some light may be thrown upon the construction to be given Section 132, by following as besl we may through the devious legislation in reference to municipal matters prior to the enactment of the code. It was conceded during *394 the debate upon the Municipal Code, that the special acts governing the cities of Cleveland and Cincinnati contributed largely to provisions ultimately embodied in the code. The general law as to the mayor of municipalities and villages which would control in the absence of special municipal legislation, prior to the adoption of the code, is found in Section 1754, Revised Statutes, et seq.
Section 1754 provides that in case of death, resignation, disability, or other vacation of his office, the council may, by vote of a majority, elect some suitable person to discharge the duties of mayor until the vacancy is filled or disability removed, etc. In this section there is no disqualification arising from absence from the city, but it seems to contemplate only such cases as would actually remove the mayor from his office. Section 1754 was in force for a great number of years prior to the enactment of our code.
Section 1715, of the general provisions for municipalities, provided that when an officer removes beyond the limits of the corporation, the act shall be deemed a resignation, and the vacancy filled as in other eases, but evidently the word ‘ ‘ remove ’ ’ means not temporary absence, but a permanent removal of residence, so that, before the enactment of the code, there is no general provision as to absence from the city disqualifying the mayor from acting. But we find in Section 1545-28, in a special act referring to and controlling the mayor of the city of Cleveland, a provision that if the mayor shall be temporarily absent from such city, or become temporarily disabled from sickness, absence, or insanity, the heads of the departments shall perform the duties of the mayor in order named in said section.
The provisions of Section 1545-28, which provides for a successor to the mayor of the city of Cleveland, when he is temporarily disabled or absent, have been epitomized by and condensed into Section 132 of the code, which provides a succession to the office of mayor by the president of council, a man duly and properly elected by the people, with the knowledge that, under the provisions of the code, he is likely at any moment to succeed to and be called upon to perform the offices of mayor.
It would appear to the court that the codifiers of our municipal law, in inserting the provisions of the law of the city of *395 Cleveland, have thought well to include temporary absence of the mayor as one of the disabilities which will allow the president of council to serve as mayor, and it appears first in the general code in Section 132, and must be given the force that evidently was intended by the Legislature.
By provision of Section 11 of the Brannock Law, it was one of the duties of the mayor to appear on behalf of the residence district, on the 15th day of July. Is it not the fact that, by reason of his absence from the city, he brought himself under both the disqualifying clauses, that of being absent from the city, and 'that of being unable to perform his duties ?
Mr. Sehaus, in his affidavit, states that during the time of the absence of the mayor, he, as acting mayor, performed certain duties that were ordinarily those of the mayor. If these acts are legal, if William H. Sehaus, as president of the city council, in the absence of Charles J. Bowlus, the duly elected mayor, was, by virtue of Section 132, enabled to discharge some of the duties of the absent mayor, by what measure are we to determine what duties he may not perform? It could not well be stated that, by the absence of Mr. Bowlus from the city, he surrendered his powers in part and retained them in part; that for certain purposes the president of council was acting mayor, and for other purposes Charles J. Bowlus was still the mayor. If such be the case, the divided authority of the mayor, resting as it would in two separate heads, would be most likely to lead to conflict.
A service was made upon Charles J. Bowlus at his residence, and also by leaving a copy at the office of Charles J. Bowlus, Mayor of the City of Springfield. It may be contended that service being required to be made upon the mayor of the city of Springfield, that no individual should be designated in such service; that summons should be issued for the mayor of the city of Springfield; that it should be served upon the mayor of the city of Springfield, upon such person as may, at the time of the service, be acting in that capacity, and that having been served by leaving a copy at the office of the mayor of the city of Springfield, it thereby became a good service upon the mayor of the city of Springfield, irrespective of what individual then occupied that exalted position, and that the name, Charles J. *396 Bowhis, both in the summons that was issued and in the return made by the sheriff, may be regarded as surplusage, which would then leave the summons as issued for the mayor for the city of Springfield, and the return thereof showing service by leaving same at the office of the mayor. But in this we are confronted with a difficulty — the city of Springfield is not a party defend-' ant, therefore it is questionable whether the provisions of Section 5041, which provides the method of service upon a corporation, would apply.
By the provisions of Section 5041, summons against corporations may be served upon the president, mayor, chairman, etc., or other chief officer, or if its chief officer be not found in the county, upon the cashier, secretary, treasurer, etc., or if none of the aforesaid officers can be found, by a copy left at the office of the usual place of business of such corporation.
A service of summons upon an individual is not good (by leaving a copy of summons) if made at his place of business (25 O. S., 336); so, consequently, a service by leaving a copy at the place of business of the mayor is not good upon the mayor, if he is to be considered as an individual, whether that individual be Charles J: Bowlus-or William H. Schaus. If we are to regard the city of Springfield as the real party to be served, and that the service should be made as upon a corporation, then, by the provisions of Section 5041, before such service can be effective, the officer serving it must have exhausted his ability to serve other officers who are subordinate to the mayor. ■ He must first serve the mayor, or other chief officer, or if the chief officer can not be found, then the cashier, treasurer or clerk; or if none of the aforesaid officers can be found, then, as a last resort, leave it at the usual place of business of the corporation.
Fee v. Big Sandy Iron Co., 13 O. S., 563, holds that a copy of the summons left at the office, or other place of business of a corporation, with the person having charge thereof, is. not- a good service, unless the return of the service shows in substance affirmatively that the chief officer or other specified officer of the corporation could not be found in the county.
So that, whether William H. Schaus or Charles J. Bowlus was, at the time of the making of the service, the mayor, and *397 consequently the party to be served, or whether a service upon the city would be good, this service at the office of the mayor of the city of Springfield is 'not good either for the individual mayor or the corporation, and of course the service, by leaving a copy at the residence of Charles J. Bowlus, is not good service upon William H. Schaus; so we are driven to the conclusion that, as by the provision of Section 132 of the Municipal Code, the absence of the mayor from the city — ipso facto — constituted the president of the city council the acting mayor for all purposes, among which were to receive the service of .the summons and to appear and defend the same upon behalf of the residence district, there has been no valid service in this case upon the mayor and no service upon the city.
The question is a new one, and relates to an obscure statute; and it is to be hoped that within a reasonable time some court of higher jurisdiction will pass upon the question; but in this case the court must hold that the service of summons upon Charles J. Bowlus, made at the time he was absent from the city, and at the time the president of the city council was performing the duties of an acting mayor, is not good and must be quashed and set aside.
After the original summons herein was set aside and quashed for lack of legal service, supra, an alias summons was issued upon the precipe of the petitioner, on September first, and the same was properly served on Charles J. Bowlus, Mayor of the City of Springfield, by personal service. The summons directed him to appear in the probate court on behalf of said residence district, on the 7th day of September, 1904, at nine o’clock a. m.
On the 6th day of September, 1904, the mayor filed his motion herein, to set aside and quash said summons, on the ground that the same was illegal, for the reasons stated in said motion.
It is claimed by the mayor that Section 11 of the Brannock Law permits only such summons as can be issued and served within twenty days from the election; and the claim is made that the summons here sought to be quashed, having been issued and served more than twenty days after the election, is illegal *398 and void, the election having been held on the 27th day of June, 1904.
Section 11 of the Brannock Law has been quoted above. The mayor claims that all the limitations as to the time in said section are mandatory, and that the section must be followed strictly; while the petitioner claims that all the requirements as to time, save alone that which limits the filing of the petition within ten days after election, are directory merely.
Section 6411, Revised Statutes, provides that—
“The provisions of the law governing civil proceedings in the court of common pleas shall, so far as applicable, govern like proceedings in the probate court when there is no provision on the subject in this title.”
It is claimed by the petitioner that there is no provision either in the Brannock act or in the probate code governing the time of beginning of an action, or the issuing of an alias summons, and that therefore we are to resort to the code of civil procedure to ascertain when an action is begun and when and under what conditions an alias summons may issue, and that any statute or decisions governing such matters in the common pleas court are applicable to this decision.
Admitting for the moment that the proceeding under the Brannock act to contest an election is a civil preceeding, and not in itself a special proceeding, complete in all matters of which it treats, we are first cited to Section 5032, Revised Statutes, which provides that a civil action must be commenced by filing a petition and causing a summons to be issued thereon. It is contended that a petition having been filed within ten days allowed by law, and a summons voidable but not void having been issued thereon, which summons was afterward quashed for lack of proper service, that the action in the probate court was properly commenced as of the date of filing the petition. It is then argued that the action having been commenced in time, that the provisions of the Brannock Law, requiring summons to issue to the mayor within a certain time are practically the same as the provisions of the civil code providing for service of summons and a return day, and for rule days, being Sections *399 5036 and 5097, Revised Statutes, and the same as Section 6476, Revised Statutes, governing proceedings in justice’s courts; and that the law and decisions as to these proceedings in common pleas and justices’ courts should govern in the proceedings at bar.
Section 5036, Revised Statutes, provides that when the time for bringing parties into court is not fixed by statute the summons shall be returned on the second Monday after its date; and Section 5097, Revised Statutes, provides the rule day for pleading, and that the answer shall be filed on or before the third Saturday after the return day of the summons.
Section 6476, Revised Statutes, of the justices’ code, provides that summons must be returned not more than twelve days from its date, and must be served not less than three days before the time of appearance.
It is argued that both the civil and justices’ code are'just as imperative in providing for time of the service and answer days as the Brannock Law, using as they do the mandatory “shall” and “must”; and that an alias summons is provided for in the civil code by Section 5037 and Section 4988, and is expressly allowed in justices’ courts by the decision of the Supreme Court in Stone v. Whittaker, 61 O. S., page 191.
But it will be observed that as to the return of the summons and rule days in the civil code, as provided by Sections 5036 and 5097, the day when the return is to be made and the pleadings are to be filed are controlled by the date of the summons. The return day is a certain time after the date of summons, and the rule days for pleadings are certain times after the return day. Everything relates back to the date of summons, which is not fixed but may vary within certain limitations to suit the wish or caprice of the plaintiff.
The 'same is true of the Justices’ Code, 6476, Revised Statutes.
But in the Brannock Law there is one certain fixed, unalterable date, which controls the subsequent proceedings, and that date is the day of election. The mayor must be summoned to appear not more than twenty days after the election, and not, as in the civil code and justices’ code, a certain number of days after the date of the summons.
*400 Sections 4987 and 4988, Revised Statutes, provide that within the meaning of the chapter in which they are contained, an action shall be deemed to be commenced as to each defendant, at the date of summons which was served on him, and that an attempt to commence an action shall be deemed equivalent to a commencement thereof within the meaning of this chapter, when the party diligently endeavors to secure service, but such an attempt must be followed by service within sixty days. There is no requirement of the code that an attempt to commence an action must be followed by service within sixty days, excepting under the provision of the chapter relating to limitations of the time of commencing actions.
The case of Lambert v. Sample, 25 O. S., pages 336-339, seems to hold differently; but the question was not before the court in that case, and later decisions have been that Section 4988 relates •only to the time of commencing the action.
An action is commenced as to each defendant at the date of the summons which was served on him (Bacher v. Shawhan, 41 O. S., page 271 [Vol. 1, Dayton decisions, page 104]; Collier v. Bickey, 33 O. S., 523; Robinson v. Orr, 16 O. S., 284-286; Buckingham v. Bank, 21 O. S., 131-140; Bowen v. Bowen, 36 O. S., 312).
McDonald v. Ketchum, 53 O. S., 519-520, holds that the filing of a petition and issuing of summons within the limitations of the statute is ineffectual where no service is made on the defendant ; but, when service is made, it relates back to the date of writ and completes, as of that date, the commencement of the proceedings, and this, although the service of the writ be made after the expiration of the statutory period for beginning the action.
The filing of a petition and a precipe within the limitations of the statute is not sufficient if no summons is issued, and is neither a commencement nor an attempt to commence an action (B. & O. R. R. v. Ambach, 55 O. S., page 553).
It thus appears that, under the code of civil procedure relating to beginning of actions, the filing of petition, causing summons to issue thereon, does not constitute the commencement of an action, unless such' summons is served; and an action is only commenced as to the defendant on the date of summons *401 which is served on him. So that, by analogy, if there is any analogy, the case at bar — the first service having failed because it was not served on the mayor — was not commenced unless it is saved by virtue of the provisions of Section 4988, Revised Statutes, by the issue and service of the alias summons on September first. Section 4988, as before stated, by its terms applies to the chapter of the code providing for the time of commencing actions, and this chapter provides various limitations of action from one to twenty years, according to the subject matter involved.
The court can not see that the provisions of this chapter can be applied to the provisions in the Brannoek act. There is nothing analogous in the subjects treated to the subject treated in the Brannoek act. Section 6411 of the probate code provides that the provisions of the law governing civil proceedings in the court of common pleas shall, so far as applicable, govern like proceedings in the probate court, when there is no provision on the subject in this title. As far as the provisions relating to the time of hearing of an election contest, under the Brannoek Law, there is no like proceeding in the civil code. The Brannock Law has provided a short term limitation of the right to bring the action, and the other provisions of the act are but in consonance with the provision that the petition shall be filed within ten days.
Section 4991 provides that, if in an action attempted to be commenced, the plaintiff fail otherwise than upon the merits, and the time limited for the commencement of the action has, at the date of such reversal or failure, expired, the plaintiff may ■commence a new action within one year after- such date. If the petitioner in this case fails, otherwise than upon the merits, and the time limited for the commencement of this action has, at the date of such failure, expired, the petitioner might commence a new action within one year after the date ‘of such failure, if the provision of Section 4991 would apply to the Brannoek Law. The very statement of such proposition is its own refutation. But there is no more reason why Section 4988 should apply to the Brannock Law than that Section 4991 should so apply. See Meisse v. McCoy, 17 O. S., page 225; also Atcherly v. Dickinson,
*402 34 O. S., page 537, as to the construction to be given to Section. 4991.
The case nearest sustaining the contention of the petitioner herein, is that of Ross v. Willet, in 54 O. S., pages 150-152. This case was an error proceeding. The plaintiff attempted to commence his proceeding in error by filing his petition and causing summons to be issued and served in proper time; but service proved ineffectual and was set aside, and that was followed by new writ and valid service in sixty days, but after the time limited for beginning the action. The ineffectual service was the result of plaintiff’s own mistake, yet the court held that Section 4988, giving him sixty days beyond the-limitation of the statute, applied. But it will be observed in all these error cases which have been cited, where the courts have applied the sections of the civil code to the error proceedings, viz, in 16 O. S., page 284; 21 O. S., page 131; 36 O. S., page 312; 53 O. S., page 519; 54 O. S., page 150, the application has been made because of the similarity of the statute providing for the commencement of a civil action and the commencement of the proceeding in error (see 16 O. S., 287, and the cases above cited). It required an elaborte argument in the error cases on the part of the court, to show that the provisions of the civil code as to the beginning of an action, should apply to error proceedings, and yet the two proceedings are almost identical.
"We have been cited to the decision of the Montgomery county judges (July 25, 1904), to the effect that the provision of the Brannock Law that the election shall be held within a certain time after the filing of the petition, is directory, as an argument why the provision as to the contest of an election should be held to be directory and not mandatory. We think the general tendency of authority is to .the effect that in all questions relating to time or method which arise prior to an election, the provisions of the statutes are held to be directory, except where clearly otherwise; but, that, in all provisions made for the contest of an election, after the same has been declared by the proper officials, are mandatory, unless it otherwise clearly appear. There is reason for this: The people have expressed- *403 themselves; the election officers have certified the result; and the presumption is that the result is a fair expression of the peoples’ voice. If any one wishes to contest this; to subject the electors of a district to a new contest, that person so desiring to overthrow the announced official result of the election must bring himself strictly within the remedies provided in his behalf (Fike v. State, 4 C. C. — N. S., page 81).
Stafford & Arthur, for petitioner.
Stewart L. Tatum, City Solicitor, for the mayor.
We would refer to the case of Taylor v. Wallace, 31 O. S., page 151, in which a very strict construction was put upon the time in which an appeal could be taken from an election.
The court must hold that the Brannock Law in itself provides for the time within which the mayor can be summoned to defend on behalf of á residence district, and that that time is fixed by the day of election, and must be within twenty days thereafter; and that this summons now sought to be quashed, designating a time more than two months after the election is without authority of law and illegal and void, and must be set aside.